### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Terrance D. Nielsen; Nancy J. Nielsen; and E.N. and N.N., minor children, by and through Terrance D. Nielsen and Nancy J. Nielsen, their parents and legal guardians, | Court File No. |
| **Plaintiffs,** | **COMPLAINT WITH JURY DEMAND** |
| vs. | |
| City of Isle; Aitkin County; Officer Alex Thurber, in his individual and official capacities; Deputy Nathan Parenteau, Deputy Jon Cline, and Deputy Cody Schwinghammer, in their individual and official capacities; and State Trooper Joseph Setnes, in his individual capacity, | |
| **Defendants.** | |

---

### INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth Amendment to the United States Constitution and under the common law of the State of Minnesota.

### JURISDICTION

2. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

### VENUE

3. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

1

## PARTIES

4. Plaintiffs Terrance Nielsen and Nancy Nielsen are husband and wife and were at all material times residents of the State of Minnesota.

5. Plaintiffs E.N. and N.N. are minor children and were at all times residents of the State of Minnesota

6. Defendant City of Isle is a municipal corporation and the public employer of Defendant Officer Thurber. Defendant City of Isle is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials.

7. Defendant Aitkin County is a municipal corporation and the public employer of Defendant Deputies Parenteau, Cline, and Schwinghammer. Defendant Aitkin County is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials.

8. Defendant Officer Alex Thurber was at all times relevant to this complaint duly appointed and acting Police Officer employed by City of Isle, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Aitkin County and/or City of Isle.

9. Defendant Deputies Nathan Parenteau, Jon Cline, and Cody Schwinghammer were at all times relevant to this complaint duly appointed and acting Sheriff's Deputies employed by Aitkin County, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Aitkin County and/or City of Isle.

10. Defendant Trooper Joseph Setnes was at all times relevant to this complaint duly appointed and acting State Trooper employed by the Minnesota Department of Public Safety – Minnesota State Patrol, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Aitkin County and/or City of Isle.

**FACTS**

11. Plaintiffs Terrance and Nancy Nielsen are husband and wife. They have two minor children, Plaintiffs E.N. and N.N. At the time of the subject incident, E.N. was 13-years-old and N.N. was 15-years-old. The Nielsens reside in the Twin Cities but own a cabin in Aitkin County near Lake Mille Lacs.

12. On July 8, 2020, the Nielsens were traveling to their cabin. They were driving their vehicle, which was a red 2018 Tesla, Model 3. Terrance was the driver, Nancy was the front-seat passenger, and the two children, Plaintiffs E.N. and N.N., were in the back seat.

13. At approximately 9:30 p.m., the Nielsens were driving on Highway 47 through Aitkin County. The Nielsens were not speeding, swerving, or driving erratically, and they were not engaged in any other illegal or suspicious activities. To the contrary, they were driving safely and cautiously and were observing all traffic regulations.

14. At the same time, Defendants Thurber, Parenteau, Schwinghammer, Cline, and Setnes were in the same area attempting to apprehend a suspect who was fleeing Officer Thurber in a motor vehicle.

15. Defendants Thurber, Parenteau, Schwinghammer, Cline, and Setnes observed the Nielsens driving on Highway 47. Defendants Thurber, Parenteau, Schwinghammer, Cline, and Setnes observed the Nielsens driving slowly and cautiously and observing all traffic regulations.

16. Defendants Thurber, Parenteau, Schwinghammer, Cline, and Setnes had a description of the suspect vehicle. The Nielsens' vehicle did not match the description of the suspect vehicle, and Defendants Thurber, Parenteau, Schwinghammer, Cline, and Setnes knew that the Nielsens' vehicle did not match the description of the suspect vehicle.

17. Despite the above, Defendants Thurber, Parenteau, Schwinghammer, Cline, and Setnes subjected the Nielsens to a felony traffic stop and terrorized the Nielsens without reasonable suspicion or probable cause for approximately 45 minutes.

18. The Defendant Officers believed that the suspect vehicle was a Chevrolet Impala yet they knew, immediately at the time of the traffic stop, that they had pulled over a Tesla.

19. The Defendant Officers knew that the suspect vehicle had a giant skull decal that covered the entire back windshield yet they knew, immediately at the time of the traffic stop, that the Tesla they had pulled over had no such decal.

20. The Defendant Officers knew that the suspect vehicle did not have license plates yet they knew, immediately at the time of the traffic stop, that the Tesla they had pulled had license plates and they aired the plate number over to dispatch.

21. The Defendant Officers knew that the suspect vehicle had deflated tires as it had just driven through a spike strip yet they knew, immediately at the time of the traffic stop, that the Tesla they had pulled over had no tire damage.

22. The Defendant Officers knew that a red Tesla that was not involved in the pursuit was in the vicinity because they observed the same Tesla drive through a checkpoint they had set up and

they acknowledged the Tesla and waived it through the checkpoint, yet they failed to recognize the same identical Tesla moments later when they stopped it just down the highway.

23. The Defendant Officers knew that the unrelated red Tesla and the red suspect vehicle both drove through their check point within a short period and traveling in the same direction, yet, upon stopping the Tesla, they refused to acknowledge that there were two red vehicles in the area and assumed, despite all the red flags, that they had stopped the correct vehicle.

24. The Defendant Officers had ample opportunity to check their squad video shortly after initiating the traffic stop to ensure they had stopped the correct vehicle, yet they refused to do so for approximately 40 minutes even though multiple officers were standing around at the scene confused about the situation with nothing to do and despite the Nielsens' requests to check their squad video.

25. During the traffic stop, the Defendants initially surrounded the Nielsens' vehicle and, with guns drawn, yelled various directives at the Nielsens. The Defendants initially yelled for Terrance to shut off the vehicle. Then they directed him to open his door from the outside using his right hand and step out of the vehicle. The Defendants then directed Terrance to walk backwards slowly with his hands up towards the sound of their voice. The Defendants were all pointing and aiming their firearms directly at Terrance as he walked backwards towards the officers. They then directed Terrance to go to his knees in the middle of the highway and place his hands on top of his head. Terrance was then immediately arrested and handcuffed behind his back by one officer as the others continued to point and aim their guns at him. Terrance was then searched and placed inside one of the squads with his family left

outside in their vehicle. Terrance was in complete shock and was in fear for his life and the lives of his wife and children.

26. The Defendants next subjected Nancy to an identical felony arrest. They aimed their firearms at her and directed her to exit the vehicle and walk backwards towards the officers with her hands up. She complied with their directives and walked barefoot as she had taken off her shoes while riding in the passenger seat. The officers then handcuffed her behind her back and placed her into another squad, separate from Terrance. Nancy was now separated from her husband and children, and the children were left behind in the vehicle unsupervised.

27. As she was being handcuffed and placed in the squad, Nancy immediately advised the Defendants that another red car had just "raced past them" and that the officers were making a mistake. She tried to reason with the officers and told them that they had "just been driving [and] taking pictures of the sunset." She was adamant that the officers were making a mistake and questioned them several times about the other red vehicle that had just passed. The Defendant officers did not care about what Nancy had to say and instead placed her in the back of the squad while she remained handcuffed behind her back.

28. Despite numerous red flags that were immediately apparent, Defendant Officer Thurber expressed that he was convinced that the Nielsens were the fleeing suspects and that he had been engaged in a high-speed chase with them for the past 15 miles. Despite the fact that all of the Defendant law enforcement officers saw the Nielsens just moments prior to the stop and knew that they were not the suspects, they all somehow became convinced that this family had just taken them on a high-speed chase.

29. The Defendant Officers next went on and arrested the minor children who were left behind in the back seat without supervision. Defendant Deputy Cline removed the 15-year-old N.N.

from the back seat (where he remained seat-belted up to this point) and demanded to know whether N.N. had any guns on him. Deputy Cline then told N.N. to put his hands on top of his head and proceeded to pat frisk him for weapons. There was no reasonable suspicion, probable cause, or any other legal justification to subject the young boy to a weapons search. N.N. was then placed into the back of a third squad, separated from his parents. The Defendant Officers kept the Nielsens' 13-year-old daughter, E.N., outside, separated from her parents and brother, and proceeded to interrogate her. She was terrified, crying, and barely able to speak. Next, the Defendant officers directed E.N. to sit in the back of the squad with her brother N.N., at which point the Defendant officers told the terrified children that they were not in trouble and isolated them from their parents by locking them in the back of the squad.

30. Next, the Defendant Officers removed Terrance from the squad and conducted a full search of his person incident to arrest. The Defendants spoke with Terrance and Nancy and the children, and all of them reported the same story – that they were just going to their cabin and that they were not involved in any traffic violations or fleeing incidents. Terrance and Nancy both told the Defendants numerous times about the other red car that had driven past them and that they had stopped the wrong vehicle. The Defendants were not persuaded, and Defendant Officer Thurber continued to insist that Terrance had taken him on a high-speed chase at speeds reaching 115 MPH. Terrance offered the Defendant officers access to the computer system inside their Tesla which tracks the vehicle speed and location on an ongoing basis and which would also show that the Nielsens were always driving the speed limit, but the Defendant Officers refused the offer. Instead, Officer Thurber told Terrance

that he was under arrest for felony fleeing in a motor vehicle, called in a tow truck to tow the Nielsens' Tesla, and placed Terrance back inside the squad.

31. Officer Thurber next turned his attention to Nancy, who was still handcuffed in the back of another squad and still separated from her children. She immediately started to once again tell the officers that they were making a mistake and question them about the other red car that had driven past them as they were being pulled over. The Defendants continued to ignore all the information the Nielsens were providing and Officer Thurber told Nancy that their Tesla was being towed and forfeited. When Nancy inquired about what will happen to her husband, Officer Thurber stated that Terrance was under arrest and going to the county jail. Nancy asked to speak with Terrance before he's taken to jail, but Officer Thurber refused that request as well. Nancy asked Officer Thurber to review the video, which would show that the officers had stopped the wrong car, but Officer Thurber refused that request as well and insisted that it was too late because Terrance was already in custody. Officer Thurber advised Nancy to call family for a ride to take her and the children to their cabin. Nancy also requested that the officers close the doors to their vehicle, which the officers intentionally left open. The Defendant Officers refused that request as well and left the Tesla sitting on the highway with all four doors wide-open. Even though Officer Thurber claimed that Nancy was not under arrest, he directed her back inside the squad and continued to detain her inside the locked squad and separated from her children without any justification.

32. Next, despite even more red flags and Nancy's requests to review the squad video, the Defendant officers proceeded to search the Tesla that they were preparing to impound and forfeit. At the same time, after detaining the Nielsens for over 40 minutes, Defendant Trooper Setnes decided to review his squad video while Officer Thurber was searching the

8

Tesla. In reviewing his squad video, Trooper Setnes realized that the Defendants had, in fact, stopped the wrong vehicle just as the Nielsens had been telling them all along. Trooper Setnes' squad video showed the Nielsens passing the check point in their Tesla with the Defendant officers waiving them through, followed by the suspect vehicle shortly after, and then followed by Officer Thurber shortly after that. Trooper Setnes then informed Officer Thurber and the remaining Defendants, at which point the Nielsesns were released. In total, the Nielsens were in custody for almost 45 minutes.

33. During the subject incident, none of the Defendant officers wore face masks or followed any other protocols related to the pandemic, thereby subjecting the Nielsens to the fear and risk of contracting COVID-19.

34. Due to the time and weather conditions at the time of the incident, the Nielsens' Tesla became infested with insects during the time the Defendants refused to close its doors. The next day, the interior of the Nielsens' Tesla was polluted with dead and dying insects. The Nielsens made their best efforts to remove the insects from the vehicle, but many of the insects became adhered to the interior upholstery, which then required professional cleaning and detailing.

35. In addition to causing an insect infestation inside their vehicle, the Defendants also ruined the Nielsens' family tradition. Every time the Nielsens drive up to their cabin, they experience stress, fear, humiliation, anxiety, and diminished quality and enjoyment of what used to be the Nielsens' favorite pastime – a trip to the family cabin.

36. As a result of Defendants' actions, Plaintiffs suffered deprivation of their freedom and liberty, property damage, fear, stress, shame, humiliation, embarrassment, diminished quality and enjoyment of life, and severe emotional / psychological trauma. Plaintiffs Terrance and

Nancy Nielsen also suffered physical pain and discomfort resulting from the handcuffing. Plaintiffs have also incurred past and future medical expenses.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEARCH, SEIZURE, AND EXCESSIVE FORCE AGAINST DEFENDANTS THURBER, PARENTEAU, SCHWINGHAMMER, CLINE, AND SETNES

37. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

38. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Plaintiffs' constitutional right to remain free from unreasonable searches, seizures, and excessive use of force under the Fourth Amendment to the United States Constitution.

39. Defendants unlawfully seized, detained, and/or arrested Plaintiffs without a warrant and without probable cause or reasonable suspicion of criminal activity.

40. Defendants further unlawfully searched Plaintiffs' vehicle without a search warrant, without probable cause, and without any other exception to the search warrant requirement.

41. Defendants unlawfully searched the persons of Terrance Nielsen and N.N. without probable cause to arrest and without reasonable suspicion that they were armed, dangerous, or presented a threat to the officers or others.

42. Finally, Defendants unlawfully handcuffed Plaintiffs Terrance and Nancy Nielsen without probable cause to arrest and without reasonable suspicion that they were armed, dangerous, or presented a threat to the officers or others.

43. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

### COUNT 2: ASSAULT AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

44. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

45. Based on the above factual allegations, Defendants engaged in wrongful, malicious, unlawful, and intentional conduct intended to put Plaintiffs in immediate, imminent, and direct fear and apprehension of an offensive touching.

46. Defendants City of Isle and Aitkin County are vicariously liable to Plaintiff for the individual Defendants' assault.

47. As a direct and proximate cause of this assault, Plaintiffs suffered damages as aforesaid.

### COUNT 3: BATTERY AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

48. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

49. Based on the above factual allegations, the Defendant Officers battered Plaintiffs Terrance and Nancy Nielsen and N.N. Specifically, the Officers engaged in intentional, offensive, and unpermitted contact with Plaintiffs during the subject incident.

50. Defendants City of Isle and Aitkin County are vicariously liable to Plaintiff for the individual Defendants' battery.

51. As a direct and proximate result of this battery, Plaintiffs suffered damages as aforesaid.

### COUNT 4: FALSE ARREST/IMPRISONMENT AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

52. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

53. Based on the above factual allegations, Defendants falsely arrested/imprisoned Plaintiffs. Specifically, Defendants intended to confine Plaintiffs, Plaintiffs were actually and unlawfully confined by Defendants, and Plaintiffs were aware that they were being unlawfully confined by Defendants.

54. Defendants City of Isle and Aitkin County are vicariously liable to Plaintiffs for the individual Defendants' false arrest/imprisonment.

55. As a direct and proximate result of this false arrest/imprisonment, Plaintiffs suffered damages as aforesaid.

### COUNT 5: NEGLIGENCE AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

56. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

57. Based on the above factual allegations, the Defendants owed Plaintiffs a duty and standard of care to follow standard police policies, practices, guidelines, and training and Defendants breached this duty and standard of care during their interactions with the Plaintiffs.

58. Defendants City of Isle and Aitkin County are vicariously liable to Plaintiffs for the individual Defendants' negligence.

59. As a direct and proximate result of this negligence, Plaintiffs suffered damages as aforesaid.


### RELIEF REQUESTED

**WHEREFORE, Plaintiffs request that this Court grant the following relief:**

a.  Issue an order granting Plaintiffs judgment against Defendants, finding that Defendants violated their constitutional rights under the Fourth Amendment to the United States Constitution and that Defendants are liable to Plaintiffs for all damages resulting from these violations;

b.  Issue an order granting Plaintiff judgment against Defendants on Plaintiffs' state law claims, finding that Defendants are liable to Plaintiffs for all damages resulting from these violations;

c.  Award of compensatory damages to Plaintiffs against all Defendants, jointly and severally;

d.  Award of punitive damages to Plaintiffs against all Defendants, jointly and severally;

e.  Award of reasonable attorney's fees and costs to Plaintiffs pursuant to 42 U.S.C. § 1988;

f.  Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFFS HEREBY DEMAND A JURY TRIAL.**

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: <u>February 23, 2021</u>        By: <u>s/ Zorislav R. Leyderman</u>
                                         ZORISLAV R. LEYDERMAN
                                         Attorney License No. 0391286
                                         Attorney for Plaintiff
                                         The Law Office of Zorislav R. Leyderman
                                         222 South 9th Street, Suite 1600
                                         Minneapolis, MN 55402
                                         Tel: (612) 876-6626
                                         Email: zrl@ZRLlaw.com